**SEARS, ROEBUCK AND CO., Plaintiff,**

v.

**GENERAL SERVICES ADMINISTRA-
TION et al., Defendants,**

and

**The Council on Economic Priorities,
Intervenor.**

**Civ. A. No. 2149–73.**

United States District Court,
District of Columbia.

Sept. 10, 1974.

As Amended Nov. 12, 1974.

S. Richard Pincus, Chicago, Ill., Burt A. Braverman, Washington, D. C., for plaintiff.

Earl L. Silbert, U. S. Atty, Arnold T. Aikens, Derek I. Meier, Asst. U. S. Attys., for defendants.

Collot Guerard, Thomas R. Asher, Media Access Project, Washington, D. C., for intervenor.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

In this action plaintiff Sears, Roebuck and Company ("Sears") seeks to prevent the disclosure to intervenor Council on Economic Priorities ("CEP" or "intervenor") of EEO-1 forms and affirmative action plans ("AAP's") submitted by nineteen Sears branches to defendant General Services Administration ("GSA" or "agency") and to the Office of Federal Contract Compliance, Department of Labor ("OFCC"), pursuant to Executive Order No. 11,246, 30 F.R. 12319 (1965), as amended by Executive Order No. 11,375, 32 F.R. 14303 (1967), and regulations promulgated thereunder, 41 C.F.R. § 60–2.1 et seq. (Revised Order 4) and 41 C.F.R. § 60–60.1 et seq. (Revised Order 14).[1]

During the summer of 1973, CEP formally requested from defendant GSA copies of plaintiff's EEO–1's and AAP's, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Subsequent to that request, plaintiff sought to persuade GSA and OFCC not to disclose those materials. Plaintiff's representatives met and corresponded with defendants from September to December, 1973. At plaintiff's request, release was delayed so that the Freedom of Information Act Committee of the Department of Justice could be consulted. That committee agreed with defendants that the Freedom of Information Act and OFCC disclosure regulations, 41 C.F.R. § 60–40.1 et seq., require defendants to disclose the material sought by CEP.

Plaintiff was repeatedly offered the opportunity to review the requested materials and justify why any particular portion should be withheld under 41 C. F.R. § 60–40.3.[2] No disclosure was to

---

1. EEO–1 reports, required of large government contractors under penalty of contract cancellation, contain statistics concerning the ethnic composition of the contractor's work force. Affirmative action plans outline steps proposed by the contractor to correct effects of past employment discrimination.

2. 41 C.F.R. § 60–40.3, in pertinent part, reads:

(a) The following documents or parts thereof are exempt from mandatory disclosure by the OFCC and the compliance agencies, and should be withheld if it is determined that the requested inspection

be made until December 10, 1973, to allow plaintiff to avail itself of that opportunity. Throughout this period plaintiff maintained that the requested documents should remain undisclosed in their entirety, and neither specified sensitive portions nor offfered to do so.

On December 6, 1973, Sears filed the instant action to enjoin defendants from disclosing EEO–1's, AAP's, and related documents. Sears withdrew its motions for preliminary injunctive relief after defendants stipulated that they would not release any material, absent ten day notice to Sears, pending resolution of this suit. The court granted CEP's motion to intervene on December 26, 1973.

On February 4, 1974, plaintiff and defendants applied for a temporary restraining order to enjoin publication and compel return by CEP of an EEO–1 form inadvertently sent to CEP by GSA. This attempted prior restraint of CEP, a party not bound by GSA's stipulation not to disclose, was denied by the court.

Defendant has moved to dismiss, and plaintiff, defendants, and intervenor have each moved for summary judg-

ment. Discovery has been stayed by stipulation pending this court's disposition of the pending motions.[3]

## JURISDICTION

At the threshold this court faces the question of jurisdiction. It is clear that the FOIA itself does not confer jurisdiction. The Act was intended to promote disclosure, not to discourage it. Its exemptions provide categories of information which the government is not required to disclose, but it does not in its terms bar voluntary disclosure by the government of information in those categories.[4] And it provides a right to *de novo* court review for those who are denied information, not for those who would suppress it. Sears is not within the class of intended beneficiaries of the Act, and we do not read into the Act an implied private right of action by those who would prevent disclosure.[5]

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., however, confers jurisdiction upon this court to consider Sears' claim. In its motion to dismiss the government appears to argue that APA jurisdiction is

---

or copying does not further the public interest and might impede the discharge of any of the functions of the OFCC or the Compliance Agencies.

(1) Those portions of affirmative action plans such as goals and timetables which would be confidential commercial or financial information because they indicate, and only to the extent that they indicate, that a contractor plans major shifts or changes in his personnel requirements and he has not made this information available to the public. A determination by an agency to withhold this type of information should be made only after receiving verification and a satisfactory explanation from the contractor that the information should be withheld.

(2) Those portions of affirmative action plans which constitute information on staffing patterns and pay scales but only to the extent that their release would injure the business or financial position of the contractor, would constitute a release of confidential financial information of an employee or would constitute an unwarranted invasion of the privacy of an employee.

. . . . .

3. Also before the court is intervenor's motion for reconsideration of this court's order of August 8, 1974, which denied its request that its counsel and experts be permitted to inspect, under protective order, Sears' EEO–1's and AAP's, and denied its request for a hearing on alleged competitive injury. For reasons outlined below, the court believes that discovery on this issue is premature at this time, and should be denied.

4. Davis, Administrative Law, § 3A.5 (1970 Supp.)

5. Sears contends that under Renegotiation Board v. Bannercraft Co., 415 U.S. 1, 94 S. Ct. 1028, 39 L.Ed.2d 123 (1974), an equity court has inherent jurisdiction over their claim. Sears fundamentally misconceives *Bannercraft*. The *Bannercraft* Court, in dicta, said that the explicit injunctive remedy provided by the FOIA is not the exclusive *remedy* to enforce the right created by the FOIA. *Bannercraft*, however, did not expand the *right* (to disclosure) provided by the FOIA.

denied either by the exemption in 5 U.S.C. § 701(a)(2) for "agency action . . . committed to agency discretion by law," or by sovereign immunity. Both objections fail. The agency discretion exemption has been read narrowly to apply only when there is "no law" that can be applied by the court in its review of the agency. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). A decision to release information is no less susceptible to court review than a decision to deny disclosure; indeed courts in this circuit have expended great amounts of energy dealing with FOIA cases. And it is settled in this circuit that the APA is a waiver of sovereign immunity.[6] Thus it seems clear that an agency decision to release data submitted to the agency by a private party is an "agency action" adversely affecting that private party and entitling that party to judicial review.[7]

Accordingly, we need not decide whether jurisdiction is conferred by any other statutes.

## SUMMARY JUDGMENT

All parties have moved for summary judgment. Additionally, Sears has asked for further discovery in the event that its motion for summary judgment is denied, such discovery being needed for Sears to augment its oppositions to defendants' and intervenor's motions. Sears' discovery requests relate to its claims under several exemptions of the

FOIA, and will be discussed when we consider those claims, below.

■ The Freedom of Information Act does not confer jurisdiction over this action, nor do its exemptions make non-disclosure mandatory. But the policies behind those exemptions provide a sound basis for determining whether release of the documents in question would be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.[8] Those policies will be applied.

■ The Freedom of Information Act is designed to encourage disclosure.

As the Supreme Court said in Environmental Protection Agency v. Mink, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973),

"Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands."

■ Section 552(b) of the Act lists categories of information that are exempt from its coverage. In construing these exemptions, the court must do so narrowly and resolve ambiguities in favor of disclosure.[9] Sears claims that its EEO-1's and AAP's in their entirety should not be disclosable by GSA because of the law and policy articulated in exemptions 5 U.S.C. § 552(b)(3) (exempted by statute) and (b)(7) (in-

---

6. Scanwell Laboratories v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

7. We sympathize with defendants' and intervenor's concerns that allowing review will enable those seeking suppression of information to frustrate the purposes of the FOIA. It should be noted, however, that:
 a. Such review extends only to information supplied by private parties.
 b. Such review extends only up to such time as disclosure moots the action. We have not required the agency to withhold information pending court review; defendants in this action have taken that step voluntarily. In future actions, the availability of preliminary injunctive relief to

preserve the status quo will depend on the usual factors, including likelihood of success on the merits, etc. In short, such preliminary relief need not be automatic.
 c. The developing law in this area should lead to a clearer understanding of which items are releasable, reducing the need for judicial review.

8. 5 U.S.C. § 706(2)(A).

9. Bristol-Myers Company v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970), Fisher v. Renegotiation Board, 153 U.S.App.D.C. 398, 473 F.2d 109, 112 (1972), Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1080 (1971).

vestigatory files), and that, in the alternative, portions of those documents should be nondisclosable under exemptions (b)(4) (trade secrets and confidential commercial data) and (b)(6) (personnel records).

### Exemption (b)(3)

 · Exemption (b)(3) applies to material "specifically exempted from disclosure by statute." Sears argues that Section 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–8(e),[10] should bar disclosure of its EEO–1 reports. Those reports are sent to the Joint Reporting Committee (JRC), which forwards copies to the appropriate federal compliancy agency for Executive Order No. 11,246—in this case the Department of Labor (OFCC) —and to the Equal Employment Opportunity Commission (EEOC). Sears argues that the JRC is in reality an agent or alter ego of the EEOC because it is composed of personnel from EEOC and funded by the EEOC. Hence disclosure by the JRC, or by any agency receiving information from the JRC,[11] is barred by Section 709(e).

 The difficulty with this argument is that § 709(e) is a criminal statute and must therefore be narrowly read, particularly in light of the requirement of exemption (b)(3) that material be "specifically exempt." And § 709(e),

in its terms, applies only to "any officer or employee of the Commission," making public "information obtained by the Commission pursuant to its authority under this section."[12] The documents in question were obtained under the authority not of § 709, but of Executive Orders 11,246 and 11,375.[13] And they were collected not by the EEOC, but by the OFCC, which has a function separate and distinct from that of the EEOC.

 Nor, for the purposes of this statute, are members of JRC "employees" of EEOC. The OFCC could require reporting forms that differ from EEO–1's, and could route them through separate channels. That it does not do so is for reasons of convenience of both contractor and agency, rather than as a bureaucratic subterfuge. The JRC is a mere collection house that collects documents for and distributes them to the authorized agencies. To the extent that JRC collects information for OFCC pursuant to Executive Order 11,246, it must be deemed an agent of OFCC, not EEOC.[14]

Sears' precise claim was raised, and overruled, in Legal Aid Society of Alameda County v. Shultz, 349 F.Supp. 771, at 775–776 (N.D.Cal.1972). There, plaintiffs sought release of EEO–1's and AAP's from a government agency that *opposed* disclosure. The court held that disclosure was compelled by the FOIA,

---

10. Section 709(e) reads:

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000 or imprisoned not more than one year.

11. Section 709(d) extends the proscription of publication to State and local agencies receiving information from the EEOC.

12. Section 709(c) is the source of EEOC's authority to require reports.

13. Federal law prohibiting discrimination by government contractors predated the Civil Rights Act of 1964, and was embodied in Executive Orders No. 10,925, 26 F.R. 1977 (1961) and No. 11,114, 28 F.R. 6485 (1963). Executive Order 11,246 superceded those Orders.

14. Sears requests further discovery on questions relating to membership and funding of the JRC. These questions, however, are not material. For purposes of § 709(e), the role of the JRC is determined not by its membership or funding, but by the destination of the forms it collects and the authority under which it collects them.

despite § 709(e) [15] *A fortiori,* when GSA/OFCC *desires* to disclose, we hold that § 709(e) does not bar disclosure.[16]

■ We also note that AAP's, which include EEO–1's,[17] are required under 41 C.F.R. § 60–2.1 et seq., and not by the EEOC at all. Hence, regardless of whether § 709(e) is read to bar disclosure of EEO–1's by GSA/OFCC, it cannot bar disclosure of AAP's, which include the data in EEO–1's.

■ Sears also argues that the documents sought were furnished to the government under express and implied promises of confidentiality, and that disclosure should therefore be barred by 44 U.S.C. § 3508(a), 18 U.S.C. § 1905,[18] and the court's equitable discretion.

Neither statute, however, "specifically exempts" documents from disclosure. Section 3508(a) merely provides that applicable law follows documents as they travel from one agency to another. We have already decided that transfer from JRC to GSA/OFCC is not to be construed as transfer from EEOC to GSA/OFCC. Under the relevant Disclosure Rules, 41 C.F.R. § 60–40.1 et seq., disclosure of EEO–1's and AAP's by GSA/OFCC is authorized by law.

Section 1905, similarly, does not expand the prohibitions of other statutes.

"18 U.S.C. § 1905 is a criminal statute prohibiting unauthorized disclosure of any information by a federal employee. There is nothing in the section which prevents the operation of the Information Act. It does not fall within the ambit of Exemption (3). M. A. Schapiro v. S. E. C., 339 F.Supp. 467 (D.D.C.1972); Frankel v. S. E. C., 336 F.Supp. 675 (S.D.N.Y. 1971), rev'd on other grounds 460 F. 2d 813 (2d Cir.), cert. denied, 409 U. S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972)."

Robertson v. Butterfield, 498 F.2d 1031 at p. 1033 n. 6 (D.C.Cir. 1974).

■ Nor can Sears argue that since the government promised confidentiality, the court should exercise its equitable discretion and refuse to order disclosure. It is well settled in this circuit "that a District Court has no equitable jurisdiction to permit withholding

---

15. Sears seeks to distinguish *Alameda* on the grounds that 1972 amendments to the Civil Rights Act require independent filing of EEO–1's with the EEOC. 42 U.S.C. § 2000e–8(c–d) (Supp. 1173). The point remains, however, that the documents at issue in this case were collected by GSA/OFCC, not EEOC, pursuant to Executive Orders, not § 709, and would be released by GSA/OFCC, not by EEOC.

16. It may be that legislation extending the proscriptions of § 709(e) to other government agencies would be desirable. That decision, however, is for the Congress.

17. 41 C.F.R. § 60–60.3(b)(1).

18. 44 U.S.C. § 3508(a) states:

If information obtained in confidence by a Federal agency is released by that agency to another Federal agency, all the provisions of law including penalties which relate to the unlawful disclosure of information apply to the officers and employees of the agency to which information is . released to the same extent and in the same manner as the provisions apply to the officers and employees of the agency which originally obtained the information . . .

and 18 U.S.C. § 1905 states:

Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law:

of information which does not fall within one of the exemptions of the Act." [19] "Nor can a promise of confidentiality in and of itself defeat the right of disclosure." [20]

Hence we hold that disclosure of EEO–1's and AAP's by GSA/OFCC to CEP is not barred by 5 U.S.C. § 552(b)(3).

### Exemption (b)(7)

■ Exemption (b)(7) applies to "investigatory files compiled for law enforcement purposes . . ." Sears argues that EEO–1's and AAP's are gathered as part of compliance procedures under the Civil Rights Act and Executive Orders and are likely to become part of litigation files used in any actions now pending or which may be brought against Sears for non-compliance. In addition, Sears claims that under amendments to Revised Order No. 14, 41 C.F.R. § 60–60.4(d), 39 F.R. 5632, "such information is now expressly 'to be considered part of an investigatory file compiled for law enforcement purposes within the meaning of 5 U.S.C. § 552(b)(7) and . . . shall be treated as exempt from mandatory disclosure under the Freedom of Information Act during the compliance review.' "

■■ The purposes behind exemption (b)(7) are:

■ to prevent the premature disclosure of the results of an investigation so that the Government can present its strongest case in court, and

■ to keep confidential the procedures by which the agency conducted its investigation and by which it has obtained information.

Aspin v. Department of Defense, 491 F. 2d 24 at 29 (D.C.Cir. 1973), quoting Frankel v. Securities and Exchange Commission, 460 F.2d 813, at 817 (2d Cir. 1972). Disclosure will clearly not prejudice the government's case in court since Sears, the potential litigant, already knows the contents of the documents in question. More important, exemption (b)(7) is clearly designed to protect interests of the government only. In this case GSA and OFCC, by their willingness to release the material, have waived those protections. We hold that Sears has no standing to assert an interest of the government when the government has explicitly waived that interest and that exemption (b)(7) gives Sears no interest of its own in non-disclosure.

In arguing that the amended Revised Order No. 14, includes EEO–1's and AAP's within exemption (b)(7), Sears has omitted crucial language from the order. That order, in pertinent part, reads:

[D]uring the conduct of a compliance review or while enforcement action against the contractor is in progress or contemplated within a reasonable time, all information obtained from a contractor under subpart B *except information disclosable under §§ 60–40.2 and 60–40.3 of this title* is to be considered part of an investigatory file compiled for law enforcement purposes within the meaning of 5 U.S.C. 552(b)(7), and such information obtained from a contractor under subpart B shall be treated as exempt

---

shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.

19. Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 672 (1971); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971). See also Legal Aid Society of Alameda County v. Shultz, 349 F.Supp. 771, 776 (N.D.Cal.1972). See also Westinghouse Electric Corp. v. Schlesinger, C.A. No. 118–

74–A, E.D.Va., April 2, 1974, Slip opinion p. 9.

Sears argues that summary judgment is inappropriate because further discovery concerning promises of confidentiality allegedly made to Sears is needed. Since we find such promises non-enforceable, whether or not they were made, this issue of fact is not *material.*

20. Petkas v. Staats, 501 F.2d 887 at p. 889 (D.C.Cir. 1974).

from mandatory disclosure under the Freedom of Information Act during the compliance review." (emphasis added)

██ EEO–1 reports and AAP's are disclosable under §§ 60–40.2 and 60–40.3. Hence Revised Order No. 14 does not bring the documents in question within exemption (b)(7).

In sum, then, disclosure of EEO–1's and AAP's is not barred by 5 U.S.C. § 552(b)(7). Accord, Legal Aid Society of Alameda County v. Shultz, 349 F. Supp. 771, 777 (N.D.Cal.1972); Westinghouse Electric Corp. v. Schlesinger, C.A. No. 118–74–A, E.D.Va., April 2, 1974, slip opinion p. 9.

### Exemptions (b)(4) and (b)(6)

Having rejected Sears' claim that its EEO–1's and AAP's should enjoy blanket immunity from disclosure under 5 U.S.C. § 552(b)(3) and (7), we turn to Sears' claim for partial exemptions. Essentially, Sears argues that (b)(4), which applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential," and (b)(6), which applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," should bar disclosure of portions of the documents held by GSA/OFCC.

In order to bring a matter (other than a trade secret) within this exemption, it must be shown that the information is (a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential. Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670, 673 (1971), quoting Consumers Union of United States, Inc. v. Veterans Administration, 301 F.Supp. 796, 802 (S.D.N.Y.1969), appeal dismissed, 436 F.2d 1363 (2d Cir. 1971). It is apparent from the requirements of 41 C.F.R. § 60–2.1 et seq. that EEO–1's and AAP's

are commercial information obtained from a person. Sears has made no claim of privilege aside from "confidentiality." Hence the issue narrows to whether the information is "confidential" within the meaning of exemption (b)(4).

██ The leading case on exemption (b)(4) is National Parks and Conservation Association v. Morton, 498 F. 2d 765 (D.C.Cir. 1974). The Court of Appeals there said that:

"commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained. (Footnote omitted)."

(p. 770)

In the present action, the government desires to release the documents, showing its lack of concern that such disclosure will impair its ability to obtain information in the future. Sears, of course, has no standing to raise that argument when the government has waived it. Thus the crux of the issue is whether disclosure of the various EEO–1's and AAP's contain "trade secrets" and whether their disclosure will "cause substantial harm to the competitive position of" Sears.

It appears to the court that this aspect of the case is not yet ripe for summary judgment. Aside from a single affidavit filed by Sears and responsive affidavits filed by GSA and CEP, (as well as legal memoranda filed by all parties,) the record is incomplete on the question of whether disclosure will harm Sears' competitive position.

In its motion for reconsideration intervenor requests further discovery and an evidentiary hearing to develop the facts necessary to decide this issue.[21]

---

21. Intervenor, of course, has previously moved for summary judgment, claiming that

there are no genuine issues of material fact. Sears has also requested further discovery

Such a process, however, would present administrative and judicial difficulties. Sears represented at oral argument that the documents in question would be "twelve inches thick." It is not clear what role intervenor could play in such a hearing, since the question at issue is whether it should have access to the documents in the first place.[22] And the court begins without any agency determination as to whether such documents should fit within the exemption. In light of other "reverse FOIA" suits which may be brought in the future, this burden should not fall totally on the court.

■■■ On the other hand, the agency involved, GSA/OFCC, has continually offered to consider specific objections under 41 C.F.R. § 60-40.3 made on the basis of (b)(4) and (b)(6) of the FOIA. Until now, Sears has refused to make such specifications, desiring instead to have its blanket claims decided judicially before proceeding to narrow its request.[23] Now that this court has rejected those blanket claims, it may be that Sears and GSA can reach an agreement regarding at least part of the material. The process should be made easier by intervenor's repeated disclaimer

of interest in trade secrets.[24] Having had its day in court on its blanket claims, Sears should exhaust its administrative remedies on its narrower claims before seeking relief from this court. Hence we shall stay the remainder of our disposition pending agency review of Sears' claims under exemptions (b)(4) and (b)(6).

Such review should be conducted in an expedited fashion in view of the amount of time already elapsed since intervenor first requested the documents, and the expedited treatment authorized by the FOIA. The court deems it appropriate that Sears submit its contentions to GSA within 30 days of the date of this order, and that the agency make its final decision (subject to this court's review), within another 60 days.

Sears has argued that the agency's Disclosure Rules fail to provide Sears with a hearing, required by due process. Since those seeking disclosure under the FOIA are not entitled to such an agency hearing, and since the agency's decision will be reviewed in this court, we decline to order such a hearing.

After the agency has reached its decision on Sears' specific claims, those decisions will be reviewed by this court.

related to its claims under exemption (b)(3). We have considered those requests above.

22. Intervenor argues that confidential commercial information is discoverable (with safeguards) in civil discovery. This may be true, but is inapposite in this action. Civil discovery is limited by requirements of relevancy. When necessary to prepare for a case that is brought for purposes other than for the discovery itself, confidential and private documents may be discoverable. The present action, however, is merely a "reverse FOIA" suit for the documents themselves. To hold that a FOIA claim itself automatically gives rights to discovery that would otherwise be limited by requirements of relevancy would effectively wipe out the protections that exemption (b)(4) was intended to give private parties. Accordingly, intervenor's motion for reconsideration must be denied.

23. Defendant and intervenor argue that this gives Sears "unclean hands," and should bar

relief. In the context of an important case of first impression in this Circuit, however, in which Sears has offered to make such specification after judicial resolution of its larger claims, we are unwilling to bar relief to Sears.

24. This should also be possible with respect to Sears' claim under (b)(6). According to Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 674 (1971), "(E)xemption (6) requires a court reviewing the matter *de novo* to balance the right of privacy of affected individuals against the right of the public to be informed; and the statutory language 'clearly unwarranted' instructs the court to tilt the balance in favor of disclosure." [Footnotes omitted] See Rural Housing Alliance v. United States Dept. of Agr., 498 F.2d 73 (D.C.Cir. 1974). It appears unlikely, from the record, that any significant portion of the material will fall under this exemption. Hence agreement may be possible, particularly in light of intervenor's disclaimer of interest in information that will invade personal privacy.

Where the agency agrees with Sears that the documentary portion in question contains material that should not be disclosed, the case will fit the more typical FOIA pattern in which the agency (GSA/OFCC) has refused disclosure and the information-seeker (intervenor CEP) has brought suit. Hence all such documentary portions should then be submitted to this court *in camera,* along with memoranda by Sears and the agency presenting their arguments for nondisclosure. Intervenor, at that time, will be given opportunity to respond appropriately. A hearing will be ordered if necessary.

In instances where the agency disagrees with Sears' contentions, Sears may, if it wishes, bring to this court those documents for *in camera* inspection, together with supporting memoranda. The agency and intervenor will then be afforded opportunity to respond. Documents which Sears does not bring to the court's attention will be ordered released by the agency to intervenor. Of course, documents which Sears does not bring to the agency's attention within 30 days as falling under (b)(4) or (b)(6) should be released by the agency immediately.

■ A few points are in order regarding the substance of Sears' burden under (b)(4). In its complaint, Sears argues that "disclosure will adversely affect the goodwill of Sears and further present opportunities for adverse public-

ity and unwarranted litigation, as the result of improper inferences and conclusions that may be drawn from such documents, with respect to plaintiff's equal employment opportunity position." (Paragraph 15.) In its Statement of Genuine Issue of Material Fact, Paragraph 17 amplifies the same fears of "irreparable harm." This fear of potential loss of goodwill is tenuous at best. It is just as likely that evidence of Sears' compliance with Executive Order 11,246 will enhance, not diminish Sears' corporate image. In any event, it is not actionable under the standards of *National Parks.*

In the affidavit of Alfred A. Kuehn,[25] however, Sears alleges a different type of harm; disclosure, it is said, will allow Sears' competitors to compete more effectively with Sears by having access to "inside information." While the affidavit is limited to a discussion of the usefulness of statistical employee breakdowns,[26] it may be that Sears' AAP's also contain plans relating to "expansions, reductions, mergers," [27] other planned "major shifts or changes in his personnel requirements," [28] or information whose release "would constitute an unwarranted invasion of the privacy of an employee." [29] We believe that these are the factors that might lead to the "substantial harm to the competitive position," envisioned by *National Parks,* and these are the kind of factors which we will consider on review.[30]

25. This affidavit was originally sent to chambers enclosed in a letter of arguments from Sears' counsel dated May 28, 1974. Although never specifically requested to do so, this court docketed the affidavit on July 31, 1974.

26. Cf. Westinghouse Electric Corporation v. Schlesinger, C.A. No. 118–74–A (E.D.Va. April 2, 1974.)

27. These factors were cited by the *Alameda* court, 349 F.Supp. 771 at 777.

28. 41 C.F.R. § 60–40.3(a)(1).

29. 41 C.F.R. § 60–40.3(a)(2).

30. Sears' belief that if . . . "defendants apply a less stringent standard for disclosure to others, than was applied here to

plaintiff, their actions would be arbitrary and capricious," fails to convince the court that discovery is needed (Plaintiff's Memorandum of P. & A. p. 25). FOIA requests made of GSA or any other agency for documents legally indistinguishable from EEO–1's and AAP's should be governed by the same rules that govern disclosure of Sears' documents. I. e., unless those documents properly fall within exemptions (b)(4) or (b)(6), nondisclosure by an agency would violate the FOIA. Evidence that such violations occur, of course, will not advance Sears' cause in this action. If an agency properly withholds such documents under (b)(4) or (b)(6), however, it is doing no more than GSA can now do, on remand, with Sears' help.

Accordingly, therefore, it is this 6th day of September, 1974,

Ordered that summary judgment be, and hereby is, granted in part for defendant and for intervenor, in accordance with this memorandum, and it is further

Ordered that further proceedings in this court be, and hereby are stayed to afford plaintiff an opportunity to exhaust its administrative remedies.