**SEARS, ROEBUCK AND CO.,**
**Plaintiff,**

v.

**GENERAL SERVICES ADMINISTRA-**
**TION et al., Defendants,**
**and**
**The Council on Economic Priorities,**
**Intervenor.**

**Civ. A. No. 2149–73.**

United States District Court,
District of Columbia.

Sept. 26, 1975.

S. Richard Pincus, Chicago, Ill., Burt A. Braverman, Washington, D. C., for plaintiff.

Earl L. Silbert, U. S. Atty., Arnold T. Aikens, Derek I. Meier, Asst. U. S. Attys., for defendants.

Collot Guerard, Thomas R. Asher, Media Access Project, Washington, D. C., for the intervenor.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

In this action Sears, Roebuck and Company seeks a declaratory judgment to prevent the defendant General Services Administration ("GSA") and various federal government officials from disclosing to intervenor Council on Economic Priorities ("CEP") EEO–1 forms ("EEO–1's") and affirmative action plans ("AAP's") submitted by nineteen Sears branches to the General Services Administration and to the Office of Federal Contract Compliance, Department of Labor. The EEO–1 reports, which . contain statistics concerning the ethnic and sexual composition of Sears' work force, are required of large government contractors under penalty of contract cancellation.[1] Affirmative action plans outline steps proposed by the contractor to correct effects of past employment discrimination. All parties have moved for summary judgment.

This Freedom of Information Act case is before the Court in a reverse posture. Whereas the typical FOIA case is initiated by a party seeking to force the government to disclose information, here Sears has sued a government agency to prevent disclosure to the intervenor. In both types of cases a government official makes the initial decision as to whether to disclose the sought records, and more particularly whether the Act compels disclosure. Typically the party seeking the records sues in court after the government official has refused dis-

---

1. Executive Order No. 11,246, 30 F.R. 12319 (1965), as amended by Executive Order No. 11,375, 32 F.R. 14303 (1967) and regula- tions promulgated thereunder. 41 C.F.R. § 60–2.1 et seq. (Revised Order 4) and 41 C.F.R. § 60–60.1 et seq. (Revised Order 14).

closure.[2] In the reverse FOIA case, as here, the government official has determined to disclose the documents, either because he finds that the Act compels disclosure, or that some other statute, regulation, or government policy requires him to comply with the request. Often the official does not reveal the basis of his decision to disclose in the reverse FOIA case.

The Freedom of Information Act provides in the relevant operative section that each agency shall promptly "make available to any person" all "identifiable records", but that the Act "shall not apply" to nine categories of exempted records. 5 U.S.C. § 552. Sears contends that the documents whose disclosure it sought to prevent fall within four of the exemptions.

■ This Court's Memorandum and Order of September 10, 1974, D.C.D.C., 384 F.Supp. 996, sets out the factual background and jurisdictional basis of the case, and contains the Court's initial ruling on the parties' cross-motions for summary judgment. In that Memorandum the Court ruled that the records do not fall within two of the Act's exempted categories, 5 U.S.C. § 552(b)(3) (exempted by statute) and (b)(7) (investigatory files),[3] and directed Sears to exhaust with the agency its claim pursuant to the policies of two other exemptions, (b)(4) (trade secrets and confi-

dential commercial data) and (b)(6) (personnel records).

### THE STANDARD OF REVIEW

The Court remanded the case to the agency for consideration under its own procedure, 41 C.F.R. § 60–40.3 et seq., with the expectation that Sears and the agency would reach an agreement regarding at least part of the material. Sears declined to designate 197 of 460 pages as exempt under (b)(4) and (b)(6), and GSA has released these documents. Moreover the agency has accepted Sears' arguments as to portions of the documents naming Sears' employees and giving identifying details and evaluative comments. The intervenor has acquiesced to the deletion of employee names, addresses and phone numbers, but argues that the identifying characteristics must be disclosed pursuant to the Freedom of Information Act. Finally, as to a portion of the pages it declined to designate, Sears has not objected to the agency's remand decision.

The parties are again before the Court. Both Sears and CEP argue that the Court should set aside portions of the agency's order.

■ The threshold question in this case is whether Sears can invoke the Freedom of Information Act, or whether the plaintiff must rely on the judicial review section of the Administrative

---

2. Here the government has refused to disclose a small portion of the records and the Court will review intervenor's challenge to that decision according to standards required in the typical FOIA case. See pp. 383, 384, infra.

3. Sears continues to argue that the documents are exempt under (b)(3) and (b)(7), even though the U.S. Court of Appeals for the District of Columbia approved this Court's ruling on these two exemptions when it dissolved its stay of the September 10 Order, since Sears had failed to show likelihood of success on the merits of its appeal of this Court's ruling on those two exemptions. 166 U.S.App.D.C. 194, 509 F.2d 527 (1974). Sears' single new argument is that a recent Supreme Court decision, F. A. A. Administrator v. Robertson, 422 U.S. 255,

95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), requires the Court to reconsider its rejection of Sears' prior (b)(3) argument, since Robertson held that (b)(3) encompasses various federal statutes limiting government disclosure, including, according to Sears, 18 U.S.C. § 1905. Sears, however, misconceives the reach of section 1905. That statute merely makes it a criminal offense for a government official to disclose various types of confidential business data if "not authorized by law". Obviously 1905 has no applicability where disclosure is compelled by statute or is authorized by agency regulation or policy. Sears' 1905 arguments add nothing to Sears' other arguments that disclosure is prohibited. Charles Rivers Park "A", Inc. v. H. U. D., 519 F.2d 935 (D.C.Cir. 1975) nn. 5 & 6.

Procedure Act in its campaign to prevent disclosure. The FOIA itself gives Sears no cause of action in the face of a government decision to disclose, if that decision is not based on the requirements of the Freedom of Information Act. If the Act requires disclosure then the agency must make the records available regardless of any argument Sears might make. If the records are exempt then the Act "shall not apply", § 552(b). The Act simply does not prohibit disclosure of records which are exempt from its coverage.

However, Sears does have a right to a declaratory judgment on the issue of whether the contested material is exempt, if the government official's decision to disclose is based solely on his finding that he is compelled to do so by the Act. The "actual controversy", as required by the Declaratory Judgment Act, 28 U.S.C. § 2201, concerns whether contested records are exempt under the FOIA. Here Sears would simply be seeking a judicial interpretation of the law which it could use to convince the agency that the Act does not require disclosure. Thus the viability of Sears' cause of action under the FOIA depends entirely on the basis of the defendants' decision to disclose.

The government's initial pleadings indicated that it desired to release the records even if not compelled to do so by the FOIA.[4] Accordingly in the September 10 Memorandum and Order this Court held that the FOIA does not apply to this case, and that to prevail Sears must show that the decision to release should be set aside under the judicial review section of the Administrative Pro-

cedure Act as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706 (2)(A). Under this view of the case, the FOIA exemptions were relevant only as guidelines in measuring the agency's action.

More recently the government has made clear its position in this regard, which is that it has not yet determined whether it will release the data should the Court find that release is not compelled under the FOIA.[5] Accordingly, it is appropriate for this Court to issue a declaratory judgment as to whether the contested documents are exempt under the Freedom of Information Act.[6]

The next legal issue, over which there has been much confusion and about which there has been much discussion by the parties in their papers, concerns the standard to be applied by this Court in its review of the agency's decision. All parties agree that the Information Act directs the Court to review, *de novo*, CEP's challenge to the agency's decision not to release portions of the documents. 5 U.S.C. § 552(a)(3). As to Sears' challenge to the agency decision, the standard of review depends wholly on the applicability of the Freedom of Information Act. The intervenor and the government correctly argue that if the Court were reviewing the agency decision pursuant to the Administrative Procedure Act it could set aside the agency's decision only on a finding that the decision was "arbitrary and capricious". *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136

---

4. *See* Motions of Defendants to Dismiss or, in the Alternative, for Summary Judgment, filed February 1, 1974, pp. 9–10, where defendants argue that the FOIA does not apply to this case because they may disclose the contested records even if not compelled to do so by the Act.

5. Motion of Defendants for Protective Order, filed June 6, 1975, p. 4.

6. This procedure is consistent with the procedure outlined by the Court of Appeals in

*Charles Rivers Park, supra.* This Court's determination that none of the records which Sears seeks to prevent GSA from disclosing is exempt under the Act makes it unnecessary to reach the other issues discussed by the Court of Appeals in that decision.

If the agency were to decide to release any information which the Court found exempt under the FOIA, then the plaintiff could seek judicial review of that decision under the Administrative Procedure Act.

(1971). But since Sears has filed a valid declaratory judgment action on whether any of the documents are exempt under the FOIA, this Court will apply the *de novo* standard mandated by the Information Act.[7]

### EXEMPTION (b)(4)

■ The data which Sears seeks to prevent from disclosure under exemption (b)(4) consists of various types of employment statistics for 19 Sears units. Section D of the EEO–1 reports consists of employment totals in nine occupational categories for each Sears unit, with columns detailing the sex and minority group status of employees. The Affirmative Action Plan reports include 19 job categories similarly broken down by race and sex, with separate tallies for hiring, promotions, terminations, training, and projected time tables for reaching affirmative action goals.

The (b)(4) exemption applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential". The September 10 Memorandum and Order discussed the applicability of that section to this case, and pointed out that the crux of the issue here is whether the EEO–1's and AAP's contain "trade secrets" or other material the disclosure of which will "cause substantial harm to the competitive position of" Sears. *National Parks and Conservation Association v. Morton,* 162 U.S.App.D.C. 223, 498 F.2d 765, 770 (1974). After reviewing the documents submitted for *in camera* inspection and the affidavits submitted by the parties [8] the Court concludes that Sears has not sustained its burden of showing that any materials contained in the EEO–1's and AAP's are exempt under (b)(4).

Since the September 10 remand Sears has submitted six affidavits from five experts,[9] in support of its contention that release of the data contained in the documents would cause it substantial competitive harm. The affidavits filed by Sears' experts generally consist of assertions that a competitor could deduce from the EEO–1 and AAP employment totals estimates of Sears' labor costs, sales volume, and plans for expansion, coupled with claims as to the harmful effects which the release of the data might have upon Sears' competitive position. The affidavits, however, do not show that release of any or all the data would cause Sears substantial competitive injury, except for general assertions to that effect. Sears' experts have also declined to compare accuracy of estimates which could be made from the contested data with estimates which can be made from data which is presently available to Sears' competitors. Obviously the data is of some value, but without such a comparison the Court cannot, based on the affidavits, make a finding that release of the documents would cause Sears "substantial competitive injury".

A second deficiency which runs through the Sears' affidavits is the as-

---

7. The Courts which have held that the Act applies in the reverse context have considered the exemptions *de novo*. *Westinghouse Electric Corp. v. Schlesinger,* 7 F.E.P. Cases 682, 685 (E.D.Va.1974); *U. S. Steel v. Schlesinger,* 8 F.E.P. Cases 923 (E.D.Va. 1974).

8. Since the remand Sears has pressed for an evidentiary hearing. On July 1, 1975 this Court heard oral argument on the applicability of the (b)(4) and (b)(6) exemptions to the data and orally denied Sears' request for an evidentiary hearing on the ground that such a hearing would not add to the extensive affidavits and written pleadings filed with the court and the agency. While there are conflicts between the Sears' affidavit and those of defendant and intervenor, these conflicts do not raise issues of material fact, but rather concern expert opinions as to the adverse consequences to Sears of release of the EEO–1 and AAP reports.

On the day of the oral hearing Sears moved for leave to file supplemental affidavits. By separate order the Court will grant that motion.

9. Sears submitted four of these affidavits to the agency. The agency forwarded the affidavits and pleadings of all parties with its decision. All these materials are part of the record here.

sumption by the Sears' experts that the GSA is releasing EEO–1's and AAP's for all Sears' units for several years. Since the information request at issue in this case is confined to nineteen Sears' units any ruling also must be so confined. Sears may raise its arguments relating to the release of other data only at the time the government proposes to release that data.

The deficiencies in the Sears' affidavits are ably identified in the affidavit of Sar A. Levitan, relied on by the defendant and intervenor. The Court embraces his affidavit and adopts his conclusion that the "EEO–1 and the affirmative action reports could not be of great usefulness to a Sears' competitor. The information which would be released could provide only the roughest approximation of sales volume, growth patterns, or labor costs. Equally accurate approximations are already possible without the use of these data".[10]

## EXEMPTION (b)(6)

■ Exemption (b)(6) applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". The exemption requires the court to "balance the right of privacy of affected individuals against the right of the public to be informed" keeping in mind that "the statutory language 'clearly unwarranted' instructs the court to tilt the balance in favor of disclosure". *Getman v. NLRB*, 146 U.S.

App.D.C. 209, 450 F.2d 670, 674 (1971); *Rural Housing Alliance v. U. S. Department of Agriculture*, 162 U.S.App.D.C. 122, 498 F.2d 73, 77 (1974).

All parties agree that the names, addresses and phone numbers of employees should be deleted. In addition, the agency proposes to delete certain other identifying information and comments. CEP challenges this decision under the Freedom of Information Act.

The GSA deletions which the intervenor challenges fall into two categories —(1) comments including reasons applicants were not hired, reasons employees left Sears, and comments concerning promotions; and (2) service, termination, and promotion dates. The Court finds that the Freedom of Information Act requires that GSA disclose material contained in both these categories.

■ The agency in its remand opinion and the government in its brief identified relatively few pages with comments. Moreover most of these comments are harmless and certainly are not the type of "files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy".[11] CEP argues that the comments are important to assessing employment discrimination. After weighing the public interest in disclosure of these comments and taking into consideration the character of the comments as well as the unlikelihood that it will be possible for members of the public to attach the comments to particular employees of

---

10. Levitan Aff., p. 7.

Sears also argues that release would cause it "substantial competitive injury" because the data would be useful to competitors in recruiting managerial personnel from Sears. Levitan also answers this argument by pointing out that with the names deleted it will be difficult to identify employees by using the AAP's and EEO–1's, and that, contrary to Sears' assertions, the reports do not identify disgruntled employees. Furthermore, even if the reports identified dissatisfied employees, it seems that a Sears' competitor who wished to hire a Sears' employee would offer him a job rather than following the circuitous route of first trying to determine the employee's attitude towards Sears. *Id.* at 7.

11. For example several of the comments in the promotions section, which are the sections containing most of the comments, list the job to which the employee was promoted; others indicate the time when the employee will be ready for promotion, note that the employee has excelled, or that an employee refused an offer of promotion to a specified position. There are a few negative comments concerning the termination of three minority employees which give as reasons for leaving "tardiness", "failure to report", and "performance not up to company standards". Affirmative Action Materials submitted for *in camera* inspection, p. 364.

The comments concerning reasons not hired on pages 47 and 48 of the defendant's

Sears, the Court concludes that the comments do not fall within exemption (b) (6).

 The dates of change in employment status involve no right of privacy directly. Apparently, the agency deleted them on the theory that these dates could be used to identify employees. Since these dates are important to comparing the advancement of ethnic minorities with others, these dates could be important to a study of Sears' employment practices with respect to minorities. Moreover, except for the comments discussed above, the other data is not personal in nature.[12] Again the public interest in disclosure of the dates of change in employment status, which are relevant to assessing employment discrimination, outweighs the minimal privacy interest especially since it is unlikely that the information can be tied to any individual.

Accordingly, it is this 26th day of September, 1975

Ordered that summary judgment be, and hereby is, granted for intervenor and in part for defendant, in accordance with this memorandum.

submission to the Court are illegible. Since the only other information which will be released concerning these applicants is their ethnic identity and therefore the subject of those comments can not be identified, release of these comments, whatever they are, could in no way constitute an invasion of privacy.

12. The reports show information such as ethnic group, sex, name of training course, and job title of employee.