SEARS, ROEBUCK AND CO., Appellant,

v.

GENERAL SERVICES ADMINISTRA-
TION et al.

No. 75–2127.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 15, 1976.

Decided April 1, 1977.

·S. Richard Pincus, Chicago, Ill., with whom Lawrence M. Cohen, Chicago, Ill., Paul J. Cherner, Alan Raywid and Burt Braverman, Washington, D. C., were on the brief, for appellant.

Paul Blankenstein, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief, for federal appellees.

Collot Guerard, Washington, D. C., with whom Thomas R. Asher, Washington, D. C., was on the brief, for appellee Council on Economic Priorities.

**1380**

Before ROBB and WILKEY, Circuit Judges, and GESELL,* United States District Judge for the District of Columbia Circuit.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

This is a "reverse" freedom of information case in which appellant Sears, Roebuck & Company has responded with a declaratory judgment action to prevent the intervenor Council on Economic Priorities from securing under the Freedom of Information Act (FOIA)[1] certain EEO–1 reports and affirmative action plans from the defendant General Services Administration. The EEO–1 reports contain data on Sears employees broken down by race and sex, while the affirmative action plans are proposed future action to correct effects of past employment discrimination.

This action is one of several judicial challenges to the Secretary of Labor's new disclosure rules of 2 February 1973,[2] which altered the previous policy of confidentiality guaranteed data submitted by Government contractors in compliance with Executive Orders 11246 and 11375[3] on nondiscrimination. Without reciting in detail the previous procedural steps in both the District Court and this court, which are duly reported,[4] this appeal is from the opinion and order of 26 September 1975 of the District Court.[5]

In that opinion the District Court reaffirmed its previous rulings that the records here do not fall within two of the Act's exempted categories, 5 U.S.C. § 552(b)(3) (exempted by statute) and (b)(7) (investigatory files), and similarly ruled that the data was not protected by two other exemptions pressed by Sears, (b)(4) (trade secrets and confidential data) and (b)(6) (personnel records). The District Court thus granted summary judgment for the intervenor and summary judgment in part for the defendant GSA.

## I. JURISDICTION AND STANDARD OF REVIEW

■ The jurisdictional basis for this suit is to be found in 28 U.S.C. § 1331(a).[6] The action arises under the FOIA[7] and relief is sought pursuant to the Declaratory Judg-

---

* Sitting by designation pursuant to Title 28, US Code Section 292(a).

1. 5 U.S.C. § 552.

2. 41 C.F.R. 60–40–1 et seq.

3. 3 C.F.R. 169–177 (1974).

4. 384 F.Supp. 996 (D.D.C.1974), 166 U.S.App. D.C. 194, 509 F.2d 527 (1974).

5. 402 F.Supp. 378 (D.D.C.1975).

6. There has been considerable confusion in recent cases concerning the proper basis for federal court jurisdiction in reverse FOIA cases. The District Court in this case relied on the APA as a grant of subject matter jurisdiction. 384 F.Supp. 996, 1000–01. In addition, this court in Charles River Park "A" Inc. v. HUD had also relied on Section 10 of the APA for subject matter jurisdiction. 171 U.S.App. D.C. 286, 519 F.2d 935, 939 (1975). The Supreme Court has recently held that Section 10 of the APA is not an implied grant of subject matter jurisdiction to review federal agency action. Califano v. Sanders, —— U.S. ——, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

The recent decision of this court in *Planning Research Corporation v. FPC* held that federal jurisdiction in reverse FOIA cases is properly grounded on 28 U.S.C. § 1331. 181 U.S.App. D.C. ——, at ——, 555 F.2d 970, at —— (1977). We are aware of the recent revision of § 1331 by Congress to eliminate the $10,000 amount in controversy requirement in civil actions "brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." Pub.L.No.94–574 § 2, 90 Stat. 2721 (1976). We will assume *arguendo*, as did the panel in the *Planning Research Corporation* case, that federal jurisdiction is to "be measured according to the provisions of § 1331 as it stood when the complaint was filed." *Id.* 181 U.S.App.D.C. at ——, 555 F.2d at 976, n.10. Given this premise, we are confident that the $10,000 requirement of the prior law has been satisfied in this case because of the high value which Sears places on the documents at issue in this case.

7. We hold in this case that summary judgment was not appropriate on the exemption 4 issue and remand to the District Court for reconsideration of the applicability of this exemption to the EEO–1 reports and affirmative action plans. See text and notes at notes 10 to 13,

ment Act,[8] since the FOIA provides for actions requiring disclosure but not actions to prevent disclosure of documents that are in the custody of Government agencies. We agree with the District Court that the "actual controversy" here is whether the records sought are exempt from disclosure under the FOIA, and that Sears has a right to a declaratory judgment on this issue.

The Government's position has shifted somewhat. It initially indicated that it desired to release the records, even if not compelled to do so by the FOIA, but its final position in the District Court and here on appeal is that it has not yet determined whether it will release the data, if the ultimate conclusion of the court is that the data is protected by one or more of the exemptions, and thus its release not compelled by the FOIA.

■ We also agree with the District Court as to the standard of and procedure in review by that court of the agency's action. The District Court is not precluded from a *de novo* consideration of the issues, since this reverse FOIA case is brought as a declaratory judgment action, not for review of agency action under the APA. The review standard of the FOIA in a suit to compel disclosure is also the appropriate standard in the reverse FOIA case. *Charles River Park "A" Inc. v. HUD.*[9]

## II. EXEMPTION 4: TRADE SECRETS AND CONFIDENTIAL COMMERCIAL DATA

5 U.S.C. § 552(b)(4) exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." The data

which Sears claims falls under exemption 4 is in: First, the EEO–1 reports, which detail employment totals in nine occupational categories, specifically broken down by sex and minority group status of employees in each Sears unit; second, the affirmative action plan, drawn up on the basis of 19 job categories, broken down by race and sex, with specific totals for hiring, promotions, terminations, training, and projected time tables for attaining the objectives.

■ The critical issue in this case, under exemptions 4 and 3, is whether this data contains "trade secrets" or other confidential material whose disclosure will "cause substantial harm to the competitive position of" the appellant Sears. *National Parks and Conservation Association v. Morton.*[10] On this issue the evidence offered the District Court was conflicting—on which statement is predicated the action we take on this appeal.

Sears filed six affidavits from five experts asserting that from the EEO–1 reports and affirmative action plan employment category totals a knowledgeable competitor could deduce Sears' labor costs, sales volume, plans for expansion, and secure other data valuable to a competitor of Sears. Sears claims these affidavits make a prima facie case for "substantial competitive harm." The intervenor and defendant countered with an affidavit by Dr. Sar Levitan, which asserted that "EEO–1 and the affirmative action reports could not be of great usefulness to a Sears competitor. The information which would be released could provide only the roughest approximation of sales volume, growth patterns, or labor costs. Equally accurate approxima-

---

infra. Thus, it can be stated with some confidence that this action arises under the FOIA itself. *See* Note, *Reverse-Freedom of Information Act Suits: Confidential Information in Search of Protection*, 70 N.W.L.Rev. 995, 1008 (1976). Given this situation, we need not range as broadly in our rationale as the Fourth Circuit did in *Westinghouse* to find federal question jurisdiction under § 1331. See *Westinghouse Electric Corp. v. Schlesinger, et al.*, 542 F.2d 1190, 1209–14 (4th Cir. 1976).

**8.** 28 U.S.C. § 2201.

**9.** 171 U.S.App.D.C. 286, 519 F.2d 935, 940 n.4, 941 n.10 (1975). *See Westinghouse Electric Corp. v. Schlesinger et al.*, 542 F.2d 1190, 1208 n.57 (4th Cir. 1976).

**10.** 162 U.S.App.D.C. 223, 498 F.2d 765, 770 (1974).

tions are already possible without the use of these data." [11]

It is at this point that we part company with the District Judge. In reference to the affidavit of Dr. Levitan, the District Judge stated,[12] "The court embraces his affidavit and adopts his conclusion . . ." This statement and the recitation from Dr. Levitan's affidavit, quoted in toto above, conclude the District Court's discussion of the exemption 4 issue. The District Court did not specify its reasons for adopting the particular conclusion advanced by Dr. Levitan. The District Court did not recite any facts in the record to which the court gave credence, either as being undisputed or as being preferable in validity to those facts relied upon in the six Sears affidavits.

The question of what this data in the reports would mean to an intelligent competitor is a factual issue. The answer to that issue is in the nature of a fact, a factual conclusion if you prefer, but still partaking of the nature of fact. The Sears affidavits make certain factual assertions concerning the nature of the material in the reports and how this material could be used by intelligent competitors to gain a competitive advantage. For example, the Sears affiants state that the information in the EEO–1 reports and the affirmative action plans cannot be obtained from commercial publications, research services, or other governmental sources. In addition, the claim is made that on-site inspections of Sears' retail units cannot yield the same type or quality of information as provided in the reports. As an example of the use to which the information in the reports could be put by competitors, the Sears affiants assert that the information would be of great use to a competitor in determining where to locate future retail stores. In addition, these affiants state that the reports clearly reveal "promotable" individuals who may be induced to leave Sears and move to a competitor. Dr. Levitan's affidavit attempts to refute the claims of competitive harm put forth in the Sears affidavits. Sears asked more than once for an evidentiary hearing, particularly for the purpose of cross-examining Dr. Levitan after his rebuttal affidavit was filed.

The District Judge believed that there were no factual conflicts which would preclude him from granting summary judgment. "While there are conflicts between the Sears affidavit and those of defendant and intervenor, these conflicts do not raise issues of material fact, but rather concern expert opinions as to the adverse consequences to Sears of release of the EEO–1 and AAP reports." [13] We think the existence and nature of any "adverse consequences to Sears" are in themselves facts to be ascertained by inquiry. While the "adverse consequences" may be considered as ultimate facts, to be derived from certain undisputed facts in the documents filed by Sears, yet the ultimate facts as to the probable future adverse consequences can only be determined by putting with those undisputed facts other facts within the experts' knowledge to reach the conclusion as to consequences. It is apparent that the five Sears experts and Dr. Levitan relied upon different experience factors to put with the facts in the documents in reaching their differing conclusions as to consequences.

Where there is a conflict in the affidavits as to what adverse consequences will flow from the revelation of the facts contained in the documents sought to be disclosed, then it appears that there is indeed a conflict regarding very material facts which calls for some type of adversary procedure. The District Court thus attempted to resolve the conflict in the ultimate facts without having the evidence before it. There also appears to be a fact conflict as to the availability of this allegedly confidential data to other persons. Summary judgment was not appropriate.

■ In regard to the kind of adversary proceeding which the District Judge should

11. 402 F.Supp. at 384.

12. *Id.*

13. *Id.* at 383 n.8.

conduct, he may do so by any means he thinks appropriate, discovery by interrogatories, oral depositions, requests for admissions, or an open hearing in court with or without the preceding discovery procedures. The District Judge permitted the filing of affidavits, but he did not permit discovery by any techniques. We think there is a right of confrontation by the appellant Sears versus Dr. Levitan (and likewise by the opposing parties versus the Sears affiants), and so the parties should have the right to examine the affiants either by depositions or in open court. If the conflicts regarding material facts are not resolved in the proceeding conducted by the District Judge, the case should be tried like any other adversary proceeding and the District Court should make findings of fact and conclusions of law.

## III. EXEMPTION 6: PERSONNEL, MEDICAL, AND SIMILAR FILES

The District Judge concluded, in agreement with intervenor Council on Economic Priorities but contrary to Sears' and GSA's contentions, that two categories of information contained in Sears' submitted data were not within exemption 6.[14] The court reached this conclusion "after weighing the public interest in disclosure of these comments and taking into consideration the character of the comments as well as the unlikelihood that it will be possible for members of the public to attach the comments to particular employees of Sears."[15]

■ The balancing analysis made by the District Judge is in accord with our prior decisions in *Rural Housing Alliance v. U. S. Department of Agriculture et al.,*[16] and *Getman v. NLRB.*[17] Despite the contention of Sears, we do not think that the recently enacted "Privacy Act"[18] would alter the procedure recommended by this court and followed by the District Judge here, nor do we think that the Privacy Act itself puts anything further in the scales for him to weigh.

■ Therefore, in accordance with the principle that findings on matters of fact by the District Court will not be upset unless clearly erroneous, we must agree with the District Court's decision on this point.[19]

## IV. EXEMPTION 3: SPECIFICALLY EXEMPTED FROM DISCLOSURE BY STATUTE—18 U.S.C. § 1905

Subsequent to both decisions of the District Court a chain of events with regard to the relationship of 18 U.S.C. § 1905[20] to

14. "(1) [C]omments including reasons why applicants were not hired, reasons employees left Sears, and comments concerning promotions; and, (2) service, termination, and promotion dates." *Id.* at 384.

15. *Id.* at 384–85.

16. 162 U.S.App.D.C. 223, 498 F.2d 73, 77 (1974).

17. 146 U.S.App.D.C. 209, 450 F.2d 670, 674 (1971).

18. 5 U.S.C. § 552(a) *et seq.*

19. Sears' original claim under exemption 7 (investigatory files) is not at issue on this appeal. Nothing has occurred since the action of the District Court in 384 F.Supp. 996 (1974) and this court in 509 F.2d 527 (1974) to alter the decision and opinions therein, hence no point under exemption 7 is raised on appeal.

20. 18 U.S.C. § 1905. *Disclosure of confidential information generally.*

Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.

exemption 3 of the FOIA occurred. In *FAA Administrator v. Robertson* [21] the Supreme Court held that the statute there involved [22] was intended to "restrict public access" to the FAA records and did fall within exemption 3 of the FOIA. This court had held to the contrary and the District Court here had relied upon our opinion.[23] Whereupon the Congress enacted an amendment to exemption 3, with the announced intention [24] of reversing the Supreme Court's broad interpretation of exemption 3. The applicable statutory subsection, effective 12 March 1977, reads:

> (b) This section does not apply to matters that are—
>
> .    .    .    .    .
>
> (3) specifically exempted from disclosure by statute (other than Section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld; .   .   .[25]

After the statute was amended, but before it became effective, this court decided *National Parks and Conservation Associates v. Kleppe (National Parks II)*,[26] in which this court reaffirmed its "view that the third exemption 'does not incorporate section 1905 into the FOIA in such a way as to make section 1905 broader than the fourth exemption,'" [27] citing our previous decision in *Charles River Park "A", Inc. v. Department of HUD.*[28]

We recognize that this court's decisions in *National Parks II* and *Charles River Park* conflict with that of the Fourth Circuit in *Westinghouse Electric Corp. v. Schlesinger.*[29] The Solicitor General has sought certiorari in *Westinghouse.*[30] Raising similar issues, several insurance companies have filed a petition for writ of certiorari to this court to review before judgment the companies' appeals from a decision of the United States District Court for the District of Columbia in *National Organization for Women v. Social Security Administration, et al.* and *Metropolitan Life Insurance Company v. Usery, et al.*[31] Following a denial of a stay by this court,[32] the Chief Justice granted a stay [33] pending further consideration by the Supreme Court.

Any reconsideration by us of the issue as to what extent 18 U.S.C. § 1905 falls within exemption 3 of the FOIA and thus forbids the disclosure of the records here (assuming that they fall within the description of § 1905) would necessarily be a reconsideration of the view of a panel of this court in *National Parks II, supra*, expressed most recently in light of both actions by the Supreme Court and Congress.[34] While the court in *National Parks II* specifically labeled its views on § 1905 and exemption 3

---

21. 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975).

22. 49 U.S.C. § 1504, section 1104 of the Federal Aviation Act of 1958.

23. 384 F.Supp. at 99.

24. H.R.Rep.No.1441, 94th Cong., 2d Sess. 14 (1976) (Conference Report).

25. 5 U.S.C. 552(b)(3), Pub.L. 94–409, 94th Cong. (13 Sept. 1976).

26. 178 U.S.App.D.C. 376, 547 F.2d 673 (1976).

27. *Id.*, at 686, quoting from *Charles River Park.*

28. 171 U.S.App.D.C. 286, 519 F.2d 935, 941 n.7 (1975).

29. 542 F.2d 1190, 1203 (4th Cir. 1975).

30. No. 76–1192, filed 28 February 1977.

31. No. 76–1052, filed 1 February 1977; C.A. Nos. 76–0087 and 76–0914, 6 Dec. 1976, as amended 14 Dec. 1976.

32. Nos. 76–2119 *et seq.*, 19 Jan. 1977.

33. A–586 *et seq.*, 45 U.S.L.W. 3517 (1 Feb. 1977).

34. *Charles River Park, supra*, was decided before the Supreme Court decision in *Robertson* and the ensuing Congressional amendment.

as dicta,[35] and theoretically we would be free to reconsider the issue, *if* we deemed it essential to the disposition of this case, yet given the presently pending matters in the Supreme Court, we think it inadvisable to express an additional view on the same issue.

■ Rather, since we are remanding this case to the District Court for a reconsideration of the issue under exemption 4, we are confident that the District Judge will himself give whatever reconsideration of § 1905 and exemption 3 is called for by the actions of the Supreme Court on the aforementioned pending matters. Irrespective of the outcome in the Supreme Court, in reviewing the particular issue the District Judge will doubtless bear in mind, as regards his freedom of action under our own decisions, that this court's views in *National Parks II, supra,* were classed as dicta, and that our views in *Charles River Park, supra,* were expressed before the Supreme Court decision in *Robertson, supra,* or the ensuing Congressional amendatory action. While the amendment to the statute had the effect of excluding § 1104 of the FAA from exemption 3, thus reversing the holding of the Supreme Court on this point, it does seem clear, as the Government appellees here agree, that § 1905 must be "considered independent of the FOIA" exemptions.[36] That is, contrary to what we thought in *Charles River Park,*[37] the congruence of § 1905 with exemption 4 is immaterial; the threshold issue now is whether § 1905 is within the now more limited group of statutes described by exemption 3. On this the Supreme Court may speak; lacking decisive new guidance by the Supreme Court, the District Court is free to reconsider its view in light of all that has taken place subsequent to its original decision.

For action in accordance with this opinion the case is

*Remanded.*

---

**35.** 178 U.S.App.D.C. at 381 n.16, 547 F.2d 673 n.16 (1976).

**36.** Government Br. at 34. *See* Note, "The Effect of the 1976 Amendment to Exemption Three of the Freedom of Information Act," 76 Col.L.Rev. 1029 (1976).

**37.** Note 9, *supra.*