## CHAMBER OF COMMERCE OF THE UNITED STATES *v.* LEGAL AID SOCIETY OF ALAMEDA COUNTY ET AL.

No. A–233.   Decided September 29, 1975

Mr. Justice Douglas, Circuit Justice.

This application for stay of the discovery order by the District Court seemed to me, when I studied it at Goose Prairie, Wash., to present a series of very important and new questions under the Freedom of Information Act, 5 U. S. C. § 552, for which guidelines would be desirable. Thus I was initially disposed to issue the stay so that in due course new guidelines could be established. But the questions presented involved so many complexities that I felt the application should be put down for oral argument so that all parties could be heard.

The Legal Aid Society of Alameda County, Cal., is suing various federal officials in Federal District Court, seeking mandamus to remedy alleged noncompliance with Executive Order No. 11246, 30 Fed. Reg. 12319

(1965), as amended, 3 CFR 169 (1964). That Order requires employers holding contracts with the Federal Government to ensure nondiscriminatory employment practices through affirmative-action programs. Applicant, the United States Chamber of Commerce, has been permitted by the District Court to intervene on behalf of various contractors with the Federal Government. Pursuant to a Legal Aid request, the District Court ordered disclosure by the General Services Administration (GSA) of information filed with it by the various contractors, *Legal Aid Society* v. *Brennan,* No. C–73–0282 (ND Cal., filed Mar. 26, 1975). The information comprises ethnic composition reports (EEO–1), affirmative-action program reports (AAP), and compliance review reports (CRR). Applicant's petition for a stay of the District Court's discovery order was denied by the Ninth Circuit without opinion, *Legal Aid Society* v. *Brennan,* Civ. No. 75–1870 (filed Aug. 4, 1975), as was its petition for rehearing and suggestion for rehearing en banc, *Legal Aid Society* v. *Brennan, supra* (filed Sept. 2, 1975).

In the District Court's opinion below, much is made of the policy of the Freedom of Information Act which requires access to official agency information. The GSA here is willing to disclose the requested information. But, as the District Court also observed: "[T]he production here sought is not pursuant to the Act, but part of a legitimate discovery effort by plaintiffs. . . . The only legitimate objections one could raise to preclude discovery are, under Fed. R. Civ. P. 26 (c), claims of privilege."

While I agree with the District Court's analysis of the posture of Legal Aid's request for information, I part company with the court when it neglects consideration of the existence of a privilege against discovery protecting those whom the applicant represents. While the Freedom of Information Act creates no privileges, *Verrazzano*

*Trading Corp.* v. *United States,* 349 F. Supp. 1401 (Cust. 1972), neither does it diminish those existing.

In my mind, a substantial question exists as to whether the parties represented by the applicant enjoy a privilege as to the information contained in the EEO–1's, AAP's, and CRR's. The Equal Employment Opportunity Commission (EEOC) is authorized to obtain the information contained in these reports, under §§ 709 (c) and (d) of the Civil Rights Act of 1964, 78 Stat. 263, as amended, 42 U. S. C. §§ 2000e–8 (c) and (d) (1970 ed., Supp. III). However, § 709 (e) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–8 (e), provides in part:

> "It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information."

Accordingly, information contained in the EEO–1's, the AAP's, and the CRR's, which are prepared from the EEO–1's, is arguably protected from disclosure by § 709 (e). See *H. Kessler & Co.* v. *EEOC,* 472 F. 2d 1147, 1152, 1153 (CA5 1973) (en banc) (majority and dissenting opinions).

To be sure, the information in the AAP's and the EEO–1's in this case was not obtained directly by the EEOC. Rather, the information was apparently collected by a Joint Reporting Committee of both the EEOC and the federal compliance agency (in this case, GSA) under Executive Order No. 11246. But the information in the EEO–1's was obtained, in part, on behalf of the EEOC, see 41 CFR § 60–1.7 (a)(1), and much of the information contained in the AAP's is essentially in the nature of that protected by § 709. Compare 41 CFR pt. 60–2 with 42 U. S. C. § 2000e–8 (c) (1970 ed., Supp. III). Indeed, certain policy considera-

tions underlying the regulations precluding release by the GSA of information contained in the AAP's are akin to those motivating the confidentiality implemented by § 709. Compare 41 CFR § 60–40.3 (a)(5) with *H. Kessler & Co., supra,* at 1150. In view of the foregoing, though some of the information involved here neither was obtained, nor is to be disclosed, by the EEOC, the congressional purpose of confidentiality, protected by criminal sanctions, is not to be lightly circumvented.

Despite these questions on the merits, there is the further question whether interim relief is necessary. Applicant will not suffer irreparable injury from disclosure of the documents because the District Court has entered a protective order permitting only attorneys for the Legal Aid Society to examine the assertedly privileged documents. Only one of the reasons advanced by the applicant may justify granting a stay despite the District Court's protective order, and it is meritless. Applicant contends that disclosure of the materials will enable Legal Aid to compel the GSA, by litigation, to conduct reviews for compliance with Executive Order No. 11246. This in turn will result in ineligibility of the affected contractors for federal contracts pending GSA review, an asserted denial of due process because the affected contractors will have no opportunity to defend the adequacy of their affirmative-action programs in the litigation between the GSA and Legal Aid. Applicant also asserts that this denial of due process causes the contractors irreparable injury. Apart from other serious difficulties with this argument, it is enough to note that the claimed irreparable injury is far from imminent since the GSA has yet to indicate that it will undertake a compliance review and the District Court has entered no order to that effect. Since applicant fails to show any imminent harm, on further study and consideration, I have decided to deny the stay.