## UNITED TECHNOLOGIES CORPORATION, PRATT & WHITNEY AIRCRAFT GROUP

v.

F. Ray MARSHALL, Secretary, United States Department of Labor, Weldon J. Rougeau, Director, Office of Federal Contract Compliance Programs, Harold Brown, Secretary, United States Department of Health.

Civ. No. H–78–555.

United States District Court, D. Connecticut.

Feb. 8, 1979.

James T. Healey, United Technologies Corporation, Hartford, Conn., James K. Kearney, Reed, Smith, Shaw & McClay, Washington, D. C., for plaintiff.

Frank H. Santoro, Diana Garfield, Asst. U. S. Attys., New Haven, Conn., for defendants.

RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CLARIE, Chief Judge.

The plaintiff has moved for a preliminary injunction to restrain the defendants from disclosing certain agency records to a third party, who has requested the records under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The defendants have filed a motion for summary judgment.

The Court finds that the plaintiff has failed to establish either a likelihood of success on the merits or a possibility of irreparable injury, and it therefore denies the plaintiff's motion for a preliminary injunction. The Court also finds that there remain disputed issues of material fact, and consequently the defendants' motion for summary judgment is also denied.

### Statement of Facts

This freedom of information case arises in a reverse posture. While the bulk of freedom of information litigation is aimed at forcing the government to disclose information, the plaintiff in this suit seeks to compel the government to withhold the contested documents. The plaintiff, United Technologies Corporation, Pratt & Whitney Aircraft Group ("Pratt & Whitney"), is a corporation engaged in the research, development and manufacture of aircraft engines, engine parts, and other products of a highly sophisticated nature. Pratt & Whitney does a substantial amount of work for the government, and as a government contractor, it is required by Executive Order,[1] and regulations promulgated thereunder by the Secretary of Labor,[2] to employ and to treat all employees equally without regard to race, color, religion, sex or national origin. Responsibility for the enforcement of the Executive Order has been delegated by the Secretary of Labor to the Director of the Office of Federal Contract Compliance ("OFCC"). 41 C.F.R. § 60–1.2.

In order to insure lawful compliance with the goals of the Executive Order, government contractors are required to prepare and to file with the OFCC an annual Employer Information Report, known as an EEO–1 report. 41 C.F.R. § 60–1.7(a). This EEO–1 report contains statistics on the numbers of women and minorities employed by the government contractor, broken down by job categories. Employers that are subject to the provisions of Title VII of the Civil Rights Act of 1964 must file EEO–1

1. Executive Order 11246, as amended by Executive Order 11375.

2. 41 C.F.R. § 60–1.1 et seq.

reports with the Equal Opportunity Commission ("EEOC"). Employers, such as Pratt & Whitney, which are subject to both the Executive Order and Title VII must file the reports with both the OFCC and the EEOC. In order to avoid duplication of filing requirements, the OFCC and the EEOC established the Joint Reporting Committee ("JRC"), which receives and processes the reports and then distributes a copy of each EEO–1 to both the OFCC and the EEOC. The Director of the OFCC has designated various federal agencies as "compliance agencies," who assume primary responsibility for monitoring compliance with the Executive Order. The Defense Logistics Agency ("DLA"), an agency of the Department of Defense, is the designated compliance agency in the present case.

On June 13, 1978 Pratt & Whitney was informed by the DLA that Representative Boyd Hines, a Connecticut state legislator, had made a request under the FOIA for the most recent EEO–1's filed with respect to Pratt & Whitney's East Hartford, Middletown, and North Haven, Connecticut facilities. The DLA further informed Pratt & Whitney that if it objected to the disclosure of the EEO–1's, it should communicate its objection, and the basis therefor, to the DLA no later than June 19, 1978. By letter dated June 16, 1978 Pratt & Whitney registered its objection to the disclosure of the EEO–1's, pressing the same arguments as have been made before this Court, which will be discussed in detail below. On July 14, 1978 the DLA notified Pratt & Whitney of its decision to release the EEO–1's, and informed the company of its right to an administrative appeal to the OFCC. Pratt & Whitney then appealed the DLA decision on July 25, 1978, reiterating the grounds for nondisclosure which had been stated in the June 16 letter to the DLA. On October 10, 1978 the OFCC notified Pratt & Whitney that its appeal was denied, based on OFCC's findings that the serious competitive injury which had been claimed by Pratt & Whitney had not been demonstrated and that none of the statutes or regulations invoked by Pratt & Whitney justified withholding the documents. The OFCC further in-

formed Pratt & Whitney that the EEO–1's would be released to the requestor on October 20, 1978.

Having exhausted its administrative remedies, Pratt & Whitney instituted suit in this Court on October 18, 1978 against the Secretary of the Department of Labor, the Secretary of the Department of Defense and the Director of the OFCC, seeking to restrain the defendants from making the threatened disclosures. The government agreed to withhold disclosure of the EEO–1's until a decision could be reached on the present motions.

### Jurisdiction

Since a reverse FOIA case involves the interpretation of a federal statute, and because the federal question statute has been amended to eliminate the minimum jurisdictional amount requirement when the defendant is the United States or one of its officers or agencies, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *Westinghouse Electric Corp. v. Schlesinger*, 542 F.2d 1190, 1209 (4th Cir. 1976), *cert. den. sub nom. Brown v. Westinghouse*, 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977); *Chrysler Corp. v. Schlesinger*, 565 F.2d 1172, 1182 (3rd Cir. 1977), *cert. granted sub nom. Chrysler Corp. v. Brown*, 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); *Sears, Roebuck & Co. v. Eckerd*, 575 F.2d 1197, 1202 (7th Cir. 1978).

Based upon the Supreme Court's teachings in *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Administrative Procedure Act, 5 U.S.C. §§ 701–706, cannot be used as an independent basis for jurisdiction.

### Discussion of the Law

Although the FOIA does not specifically provide for it, all courts which have addressed the issue agree that a submitter of information to the government has a cause of action to challenge the threatened disclosure of that information. There is, however, a divergence of opinion as to the standard to be applied by the court in reviewing

the agency's decision to disclose. Courts in the Fourth and D. C. Circuits have ruled that a *de novo* hearing should be held when an agency's decision to release information is challenged. *Westinghouse Electric Corp. v. Schlesinger, supra,* 542 F.2d at 1215; *Sears, Roebuck & Co. v. General Services Administration,* 180 U.S.App.D.C. 202, 205, 553 F.2d 1378, 1381 (1977), *cert. den.* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977).

The Third, Fifth, and Eighth Circuits, on the other hand, hold that the district court may not make a *de novo* determination in a reverse FOIA suit, but instead must rely on the administrative record. Under this view the scope of review is that described in the Administrative Procedure Act; the agency's decision will not be reversed unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1191; *Pennzoil v. Federal Power Commission,* 534 F.2d 627, 631 (5th Cir. 1976); *General Dynamics Corp. v. Marshall,* 572 F.2d 1211, 1217 (8th Cir. 1978). The Second Circuit has yet to rule on this question,[3] and this Court finds it unnecessary to resolve the conflict in the present case, because the Court finds that under either standard Pratt & Whitney has failed to demonstrate a likelihood of success on the merits or the possibility of irreparable injury.

■ The threshold question in a reverse FOIA suit is whether the requested documents are subject to mandatory disclosure under the terms of the FOIA. If the documents are subject to mandatory disclosure, then the agency has no discretion to withhold them and the lawsuit is at end. *Metropolitan Life Insurance Co. v. Usery,* 426 F.Supp. 150, 156 (D.C.D.C.1976); *General Dynamics Corp. v. Marshall, supra,* 572

F.2d at 1217–18.[4] It is clear that the EEO–1's constitute agency records within the purview of 5 U.S.C. § 552(a)(3) and are therefore subject to mandatory disclosure, unless one of the nine exemptions enumerated in 5 U.S.C. § 552(b) is applicable. *United Technologies Corporation, Pratt & Whitney Aircraft Group v. Marshall,* No. 78–8253–Civ–JE (S.D.Fla. Sept. 25, 1978). The exclusivity of the nine exemptions is made manifest in the language of the statute itself:

> "This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. . ."
> 5 U.S.C. § 552(c).

Thus the Supreme Court has noted:

> "As the [Freedom of Information] Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975).

Consistent with the FOIA's "general philosophy of full agency disclosure," S.Rep.No. 813, 89th Cong., 1st Sess., 3 (1965), the courts have universally held that the party opposing disclosure bears the burden of showing that the contested information is exempt from disclosure. *See e. g. Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 197, 523 F.2d 1136, 1146 (1975); *National Parks and Conservation Ass'n v. Kleppe,* 178 U.S.App. D.C. 376, 382 n. 20, 547 F.2d 673, 679 n. 20 (1976).

Pratt & Whitney urges that the EEO–1's are exempt from disclosure under exemptions 3 and 4 of § 552(b). Exemption 3 exempts from mandatory disclosure those documents which are:

---

**3.** However, one member of that panel, when sitting by designation in the D.C. Circuit, expressed the opinion that the scope of review is limited to the arbitrary and capricious standard. *Charles River Park "A," Inc. v. HUD,* 171 U.S.App.D.C. 286, 299, 519 F.2d 935, 948 (1975) (Lumbard, J.).

**4.** Even where one of the nine exemptions to mandatory disclosure is applicable, the courts

have held that the agency is not required to withhold the information; that is, the FOIA exemptions *permit,* but do not *require,* nondisclosure. *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1172; *Charles River Park "A," Inc. v. HUD, supra,* 171 U.S.App.D.C. at 292, 519 F.2d at 941; *General Dynamics Corp. v. Marshall, supra,* 572 F.2d at 1216.

"specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Thus, in order for exemption 3 to be operative, there must be some independent statute which exempts the documents in question from disclosure. The plaintiff points to three such statutes.

■ First, Pratt & Whitney claims that disclosure of the EEO–1's would violate 18 U.S.C. § 1905. That statute makes it a criminal offense for an employee of the United States, or one of its agencies, to release trade secrets and certain other forms of confidential commercial and financial information, except insofar as such disclosure is "authorized by law."[5] Prior to the 1976 amendment to exemption 3 it had been held that § 1905 was applicable to exemption 3. *Westinghouse Corp. v. Schlesinger, supra,* 542 F.2d at 1199–1203. The *Westinghouse* court expressly based its decision on *FAA Administrator v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), where the Supreme Court held that a different criminal statute came within the parameters of exemption 3. The legislative history of the 1976 amendment to exemption 3[6] makes it clear that the amendment was intended to supplant *Westinghouse* and *Robertson,* insofar as they supported the proposition that § 1905 comes within the ambit of exemption 3:

"Section 5(b) amends exemption (3) of the Freedom of Information Act, 5 U.S.C. § 552, . . . to overrule the decision of the Supreme Court in *Administrator, FAA v. Robertson,* 422 U.S. 255 [95 S.Ct. 2140, 45 L.Ed.2d 164] (1972).

"*Robertson* held that exemption (3), which exempts from the coverage of the Freedom of Information Act any information 'specifically exempted from disclosure by statute,' includes within its ambit section 1104 of the Federal Aviation Act of 1958 (49 U.S.C. § 1504), which allows the FAA Administrator to withhold from the public any FAA material when he believes that 'a disclosure of such information * * * is not required in the interest of the public.'

"Believing that the decision misconceives the intent of exemption (3), the committee recommends that the exemption be amended to exempt only material required to be withheld from the public by any statute establishing particular criteria or referring to particular types of information. . . .

---

**5.** That statute provides:

"§ 1905. *Disclosure of confidential information generally*

"Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department of agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment."

**6.** The 1976 amendment clarified exemption 3 by adding the underlined language to the original provision:

"(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld." 5 U.S.C. § 552(b)(3).

It should be noted that even before the passage of the 1976 amendment, at least one court had held that § 1905 was not a statute which comes within the purview of exemption 3. *Sears, Roebuck & Co. v. General Services Administration,* 166 U.S.App.D.C. 194, 196, 509 F.2d 527, 529 (1974).

"Under the amendment, the provision of the Federal Aviation Act of 1958 that was the subject of *Robertson,* and which affords the FAA Administrator *carte blanche* to withhold any information he pleases, would not come within exemption 3. *Similarly, the Trade Secrets Act, 18 U.S.C. § 1905, which relates only to the disclosure of information where disclosure is 'not authorized by law,' would not permit the withholding of information otherwise required to be disclosed by the Freedom of Information Act, since the disclosure is there authorized by law.*" 1976 U.S.Code, Cong. and Admin.News, pp. 2183, 2204–05 (emphasis added).

Since the passage of the 1976 amendment the courts have uniformly held that § 1905 does not afford a basis for exempting disclosure of documents under § 552(b)(3). *General Dynamics Corp. v. Marshall, supra,* 572 F.2d at 1217 n. 7; *Crown Central Petroleum Corp. v. Kleppe,* 424 F.Supp. 744, 752–53 (D.Maryland 1976); *Westinghouse Electric Corp. v. Brown,* 443 F.Supp. 1225, 1234 (E.D.Va.1977).[7] Accordingly, the Court finds that § 1905, read in conjunction with

exemption 3, does not exempt the EEO–1's from mandatory disclosure.[8]

Second, Pratt & Whitney claims that disclosure of the EEO–1's is proscribed by § 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–8(e). That section prohibits employees of the EEOC from disclosing any information which is made available to them pursuant to the reporting provisions of Title VII.[9] The disclosure of the EEO–1's in the instant case is being threatened, not by officials of the EEOC, but by officials of the OFCC. Thus it appears that § 709(e), which by its express terms imposes a duty of nondisclosure only on employees of the EEOC, is inapplicable. Pratt & Whitney argues, however, that since the same EEO–1 forms are filed simultaneously with both the EEOC and the OFCC, the same policy of nondisclosure should obtain.

 In spite of Justice Douglas' opinion that there exists a "substantial question" of whether § 709(e) prohibits disclosure of EEO–1's by federal agencies other than the EEOC, *see Chamber of Commerce v. Legal Aid Society,* 423 U.S. 1309, 1311, 96 S.Ct. 5, 46 L.Ed.2d 14 (1975) (Douglas, J., denying

---

**7.** Even if § 1905 were applicable to exemption 3, disclosure may be "authorized by law." The disclosure of EEO–1's is specifically mandated by OFCC regulations, 29 C.F.R. § 60–40.4. Therefore, since validly promulgated regulations have the force of law, *see Public Utilities Commission of California v. United States,* 355 U.S. 534, 542–43, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958), a number of courts have held that disclosure is "authorized by law" and thus not within the prohibition of § 1905. *United Technologies Corp., Pratt & Whitney Aircraft Group v. Marshall, supra; General Dynamics Corp. v. Marshall, supra,* 572 F.2d at 1217; *Sears, Roebuck & Co. v. Eckerd, supra,* 575 F.2d at 1200; *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1191. Other courts have reasoned that the statute pursuant to which these regulations were promulgated, 5 U.S.C. § 301, is merely a general "housekeeping" statute, which does not authorize the promulgation of regulations to override the provisions of § 1905. *Charles River Park "A," Inc. v. HUD, supra,* 171 U.S. App.D.C. at 293–94, 519 F.2d at 942–43; *Westinghouse Electric Corp. v. Brown, supra,* 443 F.Supp. at 1233 n. 5; *Metropolitan Life Insurance Co. v. Usery, supra,* 426 F.Supp. at 170. In answer to this argument, the Seventh Circuit has suggested that § 1905 may have been intended merely to prevent unauthorized, ran-

dom disclosures by individual employees of an agency, not to restrict the adoption of agency-wide rules governing disclosure. *Sears, Roebuck & Co. v. Eckerd, supra,* 575 F.2d at 1201. In any event, because § 1905 does not come within the ambit of exemption 3, the Court need not resolve this question.

**8.** Consequently, 29 C.F.R. § 70.21(a), upon which Pratt & Whitney also relies and which merely parrots the language of § 1905, also does not mandate withholding the documents.

**9.** Section 709(e) provides:

"(e) It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year."

application for stay), the courts have uniformly held that § 709(e) does not prohibit the disclosure of EEO–1's by the OFCC. *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1189; *Metropolitan Life Insurance Co. v. Usery, supra,* 426 F.Supp. at 157; *Legal Aid Society of Alameda County v. Shultz,* 349 F.Supp. 771, 775–76 (N.D.Cal. 1972); *Westinghouse Corp. v. Schlesinger, supra,* 542 F.2d at 1199; *Crown Central Petroleum Corp. v. Kleppe, supra,* 424 F.Supp. at 750; *Hughes Aircraft Company v. Schlesinger, supra,* 384 F.Supp. 292, 295 (C.D.Cal.1974). The rationale for this holding is that the Executive Order program serves a different, though complementary, purpose from Title VII. The Executive Order program antedates Title VII, and Congress has explicitly rejected attempts to transfer duties of the OFCC to the EEOC. *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1189. Since the EEOC and the OFCC function independently there is no reason to disregard that independence in order to read § 709(e) as applicable to the OFCC. *Ibid.* The courts have also rejected the argument that the Joint Reporting Committee, which collects the EEO–1's and then distributes them to the appropriate agencies, is solely the agent of the EEOC. In fact, the JRC is simultaneously the agent for a number of agencies, including the EEOC and the OFCC. *Ibid.* Since the JRC when collecting the EEO–1's in this case was acting on behalf of the OFCC, the prohibition of § 709(e) is not applicable.

■ Pratt & Whitney's third and final exemption 3 claim is that disclosure of the EEO–1's is barred by 44 U.S.C. § 3508(a), which provides that where one government agency transfers information to another, the receiving agency is subject to the same disclosure restrictions as the sending agency.[10] Pratt & Whitney argues that this provision makes § 709(e) applicable. The Court has already rejected the argument that the JRC is the alter ego of the EEOC, and has held that the JRC is a collection agent for both the EEOC and the OFCC. Thus the OFCC did not receive the EEO–1's from the EEOC, but obtained them on its own behalf. Since there was no transfer of information from one agency to another, § 3508(a) is inapposite here. *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1189; *Metropolitan Life Insurance Co. v. Usery, supra,* 426 F.Supp. at 157; *Crown Central Petroleum Corp. v. Kleppe, supra,* 424 F.Supp. at 751.[11]

■ The second FOIA exemption relied on by Pratt & Whitney is exemption 4, which exempts from mandatory disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Pratt & Whitney does not claim that the EEO–1's reveal trade secrets or that they are privileged; rather it claims that they contain confidential commercial and financial information. To be confidential the information must have the effect "either (1) of impairing the government's ability to obtain information—necessary information—in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information was obtained." *Continental Stock Transfer v. Securities Exchange Commission,* 566 F.2d 373, 375 (2d Cir. 1977).

■ Pratt & Whitney lacks standing to raise the first prong of this bipartite test.

10. 44 U.S.C. § 3508(a) provides:

"(a) If information obtained in confidence by a Federal agency is released by that agency to another Federal agency, all the provisions of law including penalties which relate to the unlawful disclosure of information apply to the officers and employees of the agency to which information is released to the same extent and in the same manner as the provisions apply to the officers and employees of the agency which originally obtained the information. The officers and employees of the agency to which the information is released, in addition, shall be subject to the same provisions of law, including penalties, relating to the unlawful disclosure of information as if the information had been collected directly by that agency."

11. This conclusion vitiates Pratt & Whitney's claim that disclosure of the EEO–1's is precluded by 29 C.F.R. § 70.31, since that regulation, in substance, merely requires that the Department of Labor comply with 44 U.S.C. § 3508 when it releases information.

Since it is the government which is seeking to release the information and since Pratt & Whitney must submit the EEO–1's as a condition of obtaining government contracts, there is no danger that the government's ability to obtain information in the future will be impaired by the release of the EEO–1's. *Continental Stock Transfer v. Securities Exchange Commission, supra,* 566 F.2d at 375; *National Parks and Conservation Ass'n v. Morton,* 162 U.S.App.D.C. 223, 228, 498 F.2d 765, 770 (1974); *Hughes Aircraft Company v. Schlesinger, supra,* 384 F.Supp. at 296.

■ With respect to the second prong of the exemption 4 test, the Court finds that Pratt & Whitney has failed to establish a likelihood that it will be able to prove at a trial on the merits that release of the EEO–1's will cause substantial harm to its competitive position.[12] Pratt & Whitney has identified three kinds of competitive injury which it contends will befall the company if the EEO–1's are released. In support of its claim Pratt & Whitney offers the affidavits of C. J. Weddle, Vice President-Controller of the Pratt & Whitney Aircraft Manufacturing Division, and Arthur R. Colby, manager of the EEO Programs of the same division. Additionally the company offered, at the oral hearing on the present motions, the testimony of Regina Hitchery, manager of professional recruitment of Pratt & Whitney Aircraft Group, and Homer Kenison, manager of financial planning and analysis for Pratt & Whitney Manufacturing Division. To rebut this evidence the government offered the testimony of Nat Weinberg, a labor economist.

Pratt & Whitney's first contention is that the EEO–1's, when analyzed in conjunction with other information currently available to its competitors, would reveal the company's production capability, provide indications of the company's innovations in manufacturing technology, and improve competitors' ability to estimate Pratt & Whitney's

product costs. These very same arguments were made by Pratt & Whitney—and rejected by a Florida district court—in an unsuccessful attempt by the plaintiff to enjoin the release of EEO–1's covering Pratt & Whitney's Florida facilities. *United Technologies Corporation, Pratt & Whitney Aircraft Group, Government Products Division v. Marshall, supra.* This Court is also not persuaded that release of the EEO–1's will have the deleterious consequences which Pratt & Whitney claims.

The EEO–1's, which have been submitted to the Court *in camera,* contain only summary data on the composition of Pratt & Whitney's workforce. All that is revealed is the number of total employees and the number of female and minority employees, broken down into nine very broad job classifications. Neither the names of the employees nor their level of compensation is listed. *See Metropolitan Life Insurance Co. v. Usery, supra,* 426 F.Supp. at 156. Despite Pratt & Whitney's claims to the contrary, the Court is not convinced that competitors could utilize the EEO–1's to meaningfully assess Pratt & Whitney's production capacity or technological advances. The government's expert witness, after studying the EEO–1's, stated that he could not fathom how they could be used for that purpose. Indeed, the company's own witness conceded that the EEO–1 forms only break down job classifications into nine general categories, whereas there are in fact hundreds of job classifications at Pratt & Whitney. Thus the information provided in the EEO–1's would afford a competitor only the very vaguest indication of how many employees are engaged in which kind of job tasks. The Court concludes that this kind of rough estimate would not materially aid a competitor in analyzing Pratt & Whitney's capacity or technology.

■ Moreover, even assuming that competitors would be so aided, Pratt & Whitney has not demonstrated the extent to which

---

12. Parenthetically, it might be noted that the EEO–1's were not requested by a competitor of Pratt & Whitney's, but rather by a state representative, who stated at the oral hearing that his purpose in seeking the documents was to respond to his Hispanic constituents' request for help in obtaining employment with Pratt & Whitney.

the competitors' ability to make such projections would be enhanced by release of the EEO–1's. Without a comparison of the accuracy of estimates which can be made from information presently available to competitors and the accuracy of estimates which could be made with the data contained in the EEO–1's, the Court cannot make a finding that release of the EEO–1's will cause Pratt & Whitney "substantial competitive injury." *See Sears, Roebuck & Co. v. General Services Administration*, 402 F.Supp. 378, 383 (D.C.D.C.1975), *remanded on a different issue* 180 U.S.App.D.C. 202, 553 F.2d 1378 (1977), *cert. den.* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977). The government witness testified that much of the information that would be required to make the predictions about the company's production capacity or technology is already available to competitors from a variety of other sources. Clearly, if the information is already available to competitors, then it does not qualify as confidential. *Hughes Aircraft Company v. Schlesinger, supra*, 384 F.Supp. at 297.

The Court is likewise not persuaded that possession of the data contained in the EEO–1's would facilitate a competitor in estimating Pratt & Whitney's product cost and then using that information to underbid Pratt & Whitney on a given project. Pratt & Whitney's argument is that since wages in the industry are competitive, knowledge of the numbers of employees in each job category—even without wage statistics—would permit a competitor to estimate the total labor cost for each of the three facilities involved here. Even assuming that this were true, the labor cost is only one component of the total product cost, and nothing in the EEO–1's would aid in estimating the cost of the other components, such as overhead and materials. Moreover, as the government's witness testified, because the job categories which are listed on the EEO–1's are so broad, wages within each category would vary significantly, and the competitor would have no way of knowing how many employees within a given category were at the upper and how many were at the lower end of the

wage scale. In addition to wage rates, other information which is not found on the EEO–1's includes hours worked, overtime, fringe benefits, and pension costs to the employer. The government's witness testified that this data would be needed to make a useful estimate of labor costs. Thus the Court concludes that the EEO–1's would not permit a competitor to assess Pratt & Whitney's labor costs. *See Hughes Aircraft Company v. Schlesinger, supra*, 384 F.Supp. at 297.

Pratt & Whitney next asserts that, because women and minority employees with the requisite training and skill are in short supply within the industry, release of the EEO–1's would encourage employee raiding. Pratt & Whitney's own witness, the manager of professional recruitment, conceded that employee raiding, as opposed to recruitment, is accomplished through direct, face to face contact with the employee. Since the names of employees do not appear on the reports, the Court is unable to discern how their release would increase the incidence of employee raiding. As was said in response to a similar contention:

"Disclosure of the EEO–1's would not cause the companies to suffer any competitive injury. Since these reports do not contain any data on projected promotions, no adverse effect on employee morale would result from their disclosure. Their disclosure would also not increase the companies' vulnerability to raiding. The job categories employed in the EEO–1's are much less specific than the job categories contained in the manning tables. Consequently, they would be of little use in pinpointing the existence of particular employees or teams of employees." *Metropolitan Life Insurance Co. v. Usery, supra*, 426 F.Supp. at 165–66. *See also Sears, Roebuck & Co. v. General Services Administration, supra*, 402 F.Supp. at 384 n. 10.

Pratt & Whitney's final claim under exemption 4 is that release of the raw statistical data could subject the company to adverse publicity. The mere fact that the company may be embarrassed by the

public disclosure of the numbers of women and minorities which it employs is not sufficient to warrant withholding of the EEO–1's. *Sears, Roebuck & Co. v. General Services Administration, supra,* 402 F.Supp. at 297. Indeed, it would seem that one purpose of the FOIA is to utilize public opinion as a lever ·in insuring compliance with the nation's statutory goals. The Court therefore concludes that Pratt & Whitney has failed to establish a likelihood that it will be able to show, at a trial on the merits, that the EEO–1's are exempt from mandatory disclosure pursuant to 5 U.S.C. § 552(b)(4).[13]

▮▮▮▮▮ Pratt & Whitney complains that the OFCC disclosure procedure deprived the company of a meaningful ' opportunity to be heard on its objections to release of the EEO–1's in violation of its constitutional right to procedural due process. This argument has been rejected summarily by all the courts which have addressed the issue. *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1193; *Metropolitan Life Insurance Co. v. Usery, supra,* 426 F.Supp. at 172; *Westinghouse Electric Corp. v. Brown, supra,* 443 F.Supp. at 1234–35. The OFCC

afforded Pratt & Whitney notice of the proposed disclosure and an opportunity to make a written submission of the reasons for its objection to disclosure. Furthermore, the agency provided an administrative appeal and a detailed written decision stating its rationale for rejecting those objections, which was then subjected to judicial review in this Court. Thus Pratt & Whitney was given notice of the proposed action and an opportunity to be heard. Due process requires nothing more. The Court, having concluded that the agency's procedures comport with due process and having found that the plaintiff has failed to make a showing of probable success on the merits, denies the motion for preliminary injunction.[14]

The denial of preliminary relief of course does not preclude Pratt & Whitney from offering more persuasive evidence at a trial on the merits. Although the plaintiff was unable at this preliminary stage to convince the Court that disclosure of the EEO–1's would cause it substantial competitive injury, it may be able to do so at trial.[15] Thus,

13. This conclusion also disposes of Pratt & Whitney's assertion that disclosure of the EEO–1's would violate 29 C.F.R. §§ 70.22 and 70.24 and 41 C.F.R. § 60–40.3, because those regulations deal only with information which is exempt from mandatory disclosure.

14. A preliminary injunction may not be granted, absent a showing of both probable success on the merits and possible irreparable injury. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In the present case the two requirements coalesce. The only irreparable injury claimed by Pratt & Whitney is that disclosure of the EEO–1's will damage the company's competitive position, which is identical to the claim made with respect to exemption 4. Thus the Court's finding of no probability of success on the exemption 4 claim dictates the conclusion that no showing of irreparable injury has been made.

15. The government suggests that the arbitrary and capricious standard of review is appropriate in this case, and that a trial *de novo* is not permitted. Thus, the government claims, the Court's review is limited to a review of the agency record, and because no new evidence may be introduced, the case is ripe for summary judgment. Because the question of the appropriate standard of review to be applied in reverse FOIA suits is presently pending before

the Supreme Court, *see Chrysler Corp. v. Schlesinger, supra,* this Court expressly declines to decide that issue. Therefore the defendants' motion for summary judgment must be denied at this time.

At the same time, however, the Court declines the plaintiff's invitation to grant the preliminary injunction until the *Chrysler* decision is rendered. None of the questions raised by that appeal will affect the denial of preliminary relief in this case. As noted earlier, the plaintiff has failed to make a showing of likelihood of success on the merits, regardless of which standard of review is applied. In light of the Court's ruling that the EEO–1's will probably be found not to come within exemption 4, the second question raised by *Chrysler*—whether an agency may release information which *does* come within the exemption—has no bearing on the present motion. The final issue pending before the *Chrysler* case—whether regulations promulgated pursuant to 5 U.S.C. § 301 are "authorized by law" and therefore not within the prohibition of 18 U.S.C. § 1905—is similarly inapplicable. *See* footnote 7, *supra.* Moreover, in light of the Second Circuit's recent admonition that FOIA requests should be acted on promptly, *see Pierce & Stevens Chemical Corp. v. United States Consumer Product Safety Commission,* 585 F.2d 1382 (2d Cir. 1978), a

the question of whether Pratt & Whitney will suffer competitive harm as a consequence of the disclosure is a question of material fact which has not yet been finally resolved. *Sears, Roebuck & Co. v. General Services Administration,* 180 U.S.App.D.C. 202, 206, 553 F.2d 1378, 1382 (1977), *cert. den.* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977). The defendants' motion for summary judgment is therefore denied.

The foregoing opinion shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

SO ORDERED.

ruling which delayed disclosure until the Supreme Court has decided the *Chrysler* case would fly in the face of the specific Congressional direction that FOIA requests be "expedited in every possible way." 5 U.S.C. § 552(a)(4)(D).